This was a bill filed by Samuel S. Downey plaintiff, against James M. Bullock, John S. Hunt and Frances Ann, his wife, William B. Hunt, Richard B. Hunt, Leonard H. Hunt, Emily F. Hunt, Lucy B. Hunt, Susannah B. Hunt, and Mary E. Hunt. The bill sets forth, in substance: That William Bullock, late of the County of Granville, departed this life sometime in the year 18__, having first duly made his last will and testament, of which he appointed his son, John Bullock, the sole executor, and which, after his death, was duly proved and recorded, and the said John Bullock duly qualified as executor — that the said testator, in and by his said will, did, among other things, devise and bequeath, as follows: "I give unto my son John Bullock, in trust for the heirs of my daughter Fanny Ann Hunt, the fifteen negroes I put in her possession at her marriage with Capt. J. Hunt, also the tract (103) of land, whereon Capt. Hunt now lives, containing 585 acres. I give the stock of horses, etc., loaned John and Frances, in the same manner to them and their heirs forever, to the heirs proceeding from the body of my daughter, Frances Ann." The bill further sets forth, that, doubts arising as to the construction and difficulties in the execution of the said will, the said John Bullock, the executor, exhibited his bill, in this Court, at _____ Term, 18__, against the said John F. Hunt, and Frances, his wife, and the legatees and devisees named in the said will, praying that the true construction of the said will might be declared, that he might be directed and protected by a decree of the Court, in the execution of his trust, and for other relief in the said bill mentioned — that answers having been put in, the said cause was set down *Page 79 
for hearing, and by an order of this Court was removed into the Supreme Court for hearing — that the same came on to be heard at December Term, 1832, of the said Court, when their Honors declared, that by the words "heirs" and "heirs of the body," in the before recited clause, the testator meant the children or issue of the said Frances Ann, as well those which should come in being after the making of the will as those who were in being at the making thereof, and, in and by the decree containing the said declaration, the said Court directed that the said John Bullock, the executor and trustee, might, if he should think proper, put the property, devised and bequeathed in the above recited clause, into the possession of the said John F. Hunt for the support of his family, and might permit the said John to expend the whole profits for that purpose and for the education of his children. And the bill further sets forth, that the said John Bullock, under the permission granted him by the said decree, did put the said John in possession of the said property, real and personal, and permit him to have the entire control, management and direction thereof, and the said John, being so in possession, continued, for several years and until the proceedings in this suit had, to superintend and manage the said property, (104) to employ overseers, and to make purchases of clothing, groceries and all other necessaries for and on account of his said family. The bill further set forth, that, about the year 1838, Thomas Hunt, the father of the said John, then residing in the State of Mississippi, and being desirous to have his son with his wife and children settled near him, proposed to the said John to remove to the said State and proposed many arrangements for his advancement and for the comfort and advancement of his family, and the said John, believing that his and their interest would be greatly promoted by such removal, accepted his father's offer; that a difficulty however was found in regard to the negro slaves, which the trustee had no power to authorize the said John to remove, while, if they should remain, no considerable profit could be expected from their labor and very serious inconvenience would be sustained by Mrs. Hunt and her children for the want of their services as domestics in their new home; that, in pursuance of the wishes of the family, in the said year 1838, proceedings were instituted in this Court, upon which at _____ Term of that year a decree passed, appointing the said Thomas Hunt a trustee, in the stead of the said John Bullock, and authorizing the removal of the said slaves to the State of Mississippi, upon certain terms and conditions therein specified. The bill further sets forth, that, in the latter part of that year the said John T. Hunt, acting under the authority of the said Thomas, had made his arrangements for the removal of his family with the said slaves, when an unexpected difficulty presented itself; that the said *Page 80 
Thomas Hunt having contracted debts for and on account of his family and as the agent of the said John Bullock, the trustee, upon the faith of the said trust fund, the creditors interposed to prevent the (105) removal of the slaves until their debts were paid or secured; and that the said Mr. and Mrs. Hunt earnestly solicited the plaintiff to become responsible for these debts. The bill further sets forth, that yielding to the entreaties of the said John and Frances Hunt and their friends, and assured that the said Thomas Hunt, the new trustee, would see that he was indemnified out of the trust fund or otherwise, the plaintiff gave a written engagement to become responsible for these debts, provided the same should not be payable before 1 June, 1842, and afterwards, in pursuance of the said engagement, joined the said John T. Hunt in bonds to the respective creditors for their demands, payable as above mentioned, amounting in the whole to about the sum of $4,060; and that the plaintiff, upon executing the said bonds, took from the said John T. Hunt a written memorandum, stating the circumstances, under which the said bonds were given, signed by the said John as agent of his father, Thomas, the trustee; that the said John at the same time placed in the hands of the plaintiff, to be applied towards the payment of the bonds so given by him as aforesaid, three securities (particularly described in the bill); and that, annexed to the bill, there is a schedule of the bonds by him given and subsequently paid, and that, after applying towards the plaintiff's reimbursement the moneys due upon the said securities, there remains due to the plaintiff as of the date of the 1st June, 1842, the sum of $2,183.27 or thereabouts. The bill further sets forth, that, at the foot of the memorandum so given by the said John Hunt, the plaintiff added a statement of the said three securities deposited with him, as aforesaid, and the application to be made thereof, and signed the same, and the paper, containing the said memorandum and statement, being submitted to the said Thomas Hunt, he endorsed thereupon and signed a written approval of what the plaintiff had done, acknowledging his right to be reimbursed out of the said trust fund, which approval the plaintiff has ready to produce, etc. (106) The bill further sets forth, that the several debts for which his bond were given, as mentioned in the said schedule, were all contracted for just and necessary purposes, properly chargeable and payable out of the said trust fund, (particularly specifying some of them,) and all the other debts, mentioned in the said schedule, were for necessaries furnished to the said family and purchased for them by the said John Hunt, while acting under the authority of the said John Bullock, and, according to the declarations of the said decree, were justly payable out of and chargeable upon the said fund; and the bill proceeded to state, that the plaintiff was advised, that, having, *Page 81 
under the circumstances before stated, become bound for the payment of the said debts and having paid the same, he is entitled in this Court to be reimbursed out of the said trust property, because in this Court he is entitled to be substituted to all the rights of the creditors, whose demands he has satisfied, and because, by the payment of the said demands, he has a right in this Court, independently of such substitution, to look to the said fund for his reimbursement. And the bill further set forth, that the said Thomas Hunt, though at the time of his appointment and the removal of the said slaves, in possession of a large estate, has since become entirely insolvent, and entirely unable in any manner to indemnify the plaintiff, and the said John Hunt was at no time of ability so to do, but was, and yet is, dependent upon the said trust property for his own support; that, since the change in his father's circumstances, the said John Hunt has returned with his family and the said slaves to the County of Granville, where he is now residing; that the defendant James M. Bullock has been duly appointed by this Court trustee for Mrs. Hunt and her children in the place of the said Thomas Hunt, and hath now the charge and superintendence of the real and personal estate, composing the said trust (107) fund, which, under his management, is now producing a larger income than is necessary for the support and maintenance of the said family and education of the children; and that the plaintiff is advised, that, in this Court, he has a right, not only to have the surplus profits of the fund applied to the payment of his demand, but, if necessary, to have satisfaction out of the principal thereof. The bill further sets forth, that the defendants, William B. Hunt, Richard B. Hunt, Leonard H. Hunt, Emily F. Hunt, Lucy B. Hunt, Susannah B. Hunt, and Mary E. Hunt, are the children and only issue of the defendants, John F. and Frances Hunt, that they are infants, under the age of twenty-one years, personally under the charge of their father, the said John, having no property or estate except the said trust fund, and having no guardian except the defendant, James M. Bullock, who, as their trustee, has the possession and control of their said property, and that the plaintiff hath applied to the said James, and requested that his said debt may be allowed, and provision made for the payment thereof out of the said trust property, but that he, though nothing doubting any of the matters herein stated, and though perfectly willing to do anything, which is just and proper in the premises, yet declines to comply with the plaintiff's request, because of the responsibility, which would thereby be imposed upon him, and which, as he supposes, he ought not, as trustee, to assume.
The bill concludes with the usual prayer for process, answers, and such relief as the nature of the case may require. *Page 82 
The answer of the defendants was put in by James M. Bullock for himself and the infant defendants. It admits or does not deny most of the allegations in the bill, but it denies that John Bullock ever gave authority to John F. Hunt to contract any debts on the faith of (108) the trust estate, and avers that this was well known in the neighborhood and particularly to the plaintiff. It denies that the plaintiff signed the bonds, with any reliance upon the trust property for his indemnity, but avers that he signed them upon the personal responsibility of John F. Hunt, who was then in good circumstances, and who also gave the plaintiff counter security in some form or other. It also denies that the debts mentioned by the plaintiff were contracted except a very small portion of them if any, for the benefit of the cestui que trust.
Replication was entered, depositions taken and the cause set for hearing and transmitted to the Supreme Court.
From the proofs we are satisfied, that much the larger part of the amount, for which the plaintiff became bound, were debts of John Hunt contracted for his own purposes, and not for the support and education of his children, or for expenses incurred on account of the slaves.
We are also satisfied, that the plaintiff assumed the liability, trusting for indemnity to the notes, which were put into his hands, and to the guaranty of Thomas Hunt, and that this is an attempt, upon the failure of said Hunt to fall back upon the trust fund, which was not before looked to.
But apart from these considerations, the case made by the bill is fatally defective. "By a decree of this Court, it was directed, that John Bullock (then acting as trustee,) might, if he should think proper, put the trust fund into the possession of John Hunt for the support of his family, and might permit him to expend the whole profits for (109) that purpose, and for the education of his children." The fund, consisting of a plantation, and some twenty or thirty negroes, with a stock of horses, cattle, household furniture, etc., was put into the possession of John Hunt. He had the entire control and management of it, and was at liberty to apply the whole of the profits to the support and education of his children, all of whom were then quite young. This state of things continued for some five years, when, in 1838, Thomas Hunt was appointed trustee in place of John Bullock, with a view to the removal of the said John Hunt and his family, and of the negroes, *Page 83 
forming the most valuable part of the trust fund, to the State of Mississippi. The plaintiff alleges, that, at that time, John Hunt had incurred debts for and on account of his children, and the necessary charges in respect of the negroes, to the amount of $4,060, over and above the whole profits of the trust fund; and that he, out of friendship for the wife and children of said Hunt (the cestui que trust,) became bound for the payment of the several debts, making the above amount, in order to enable Hunt to take the negroes to the State of Mississippi.
The funds are now in the hands of another trustee, James W. Bullock, one of the defendants; and the plaintiff seeks to charge it with the sum he has been obliged to pay. It is clear, he must make out his equity by and through John Hunt, for whom, and at whose instance, he became bound.
John Hunt alleges, that he exceeded the profits of the fund some $4,000, but he exhibits no account, and, for aught that appears, he kept none, so as to show what was the amount of profits received, and how it was expended, and by what means he was obliged so far to overrun his limit. This is the fatal defect in the bill. Upon its face it shows, that Hunt, in whose shoes the plaintiff stands, has been guilty of gross negligence or of downright extravagance. It would be (110) extravagance to exceed the income of one's own property — much more so in regard to a trust fund; and still more so, when there is an express restriction to the profits of the fund; and yet, without any account or attempt at explanation, the plaintiff seeks to follow and charge the trust fund. There is no principle of Equity, upon which the bill can be sustained.
It may be true, that, under some circumstances, a trustee, although restricted to the expenditure of the profits, may be at liberty to anticipate by spending, under an emergency, more than the profits of the current year; as if there be a dearth and a consequent failure of crops, or some extraordinary sickness, making it necessary to incur heavy medical bills: but, in such case, the existence of this emergency must be averred and proven and a full account rendered.
The bill must be dismissed at the plaintiff's cost.
PER CURIAM. Dismissed.
Cited: Motley v. Motley, post, 213; Hussey v. Rountree, 44 N.C. 112;Freeman v. Bridgers, 49 N.C. 4; Patton v. Thompson, 55 N.C. 413;Johnston v. Coleman, 56 N.C. 293. *Page 84 
(111)